**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHEN FRANCIS DANIELS,<br><br>Plaintiff,<br>v.<br><br>POSTMASTER GENERAL, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>No. 4:25-cv-01632-RWS |

**MEMORANDUM AND ORDER**

Before the Court is self-represented Plaintiff Stephen Francis Daniels's application to proceed in district court without prepaying fees or costs. Based on Plaintiff's financial information, the Court grants his application and waives his filing fee. As Plaintiff is proceeding in forma pauperis, his complaint is subject to the Court's initial review. On initial review under 28 U.S.C. § 1915(e)(2)(B), the Court dismisses this action for failure to state a claim upon which relief may be granted.

**Legal Standard on Initial Review**

Complaints filed in forma pauperis by non-prisoners are subject to pre-service review pursuant to 28 U.S.C. § 1915(e)(2)(B). *See Carter v. Schafer*, 273 F. App'x 581 (8th Cir. 2008). Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Serv. LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). But even pro se complaints must "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

**The Complaint**

Plaintiff brings this 61-page complaint under the Rehabilitation Act (RA), Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act (ADEA), alleging the United States Postal Service discriminated against him based on his age and disability and retaliated against him. He also brings the following counts arising out of his EEOC administrative proceedings: deprivation of due process (Count IV); fraud and perjury in official proceedings (Count V); negligent training and systemic failure (Count VI); and spoliation of evidence and discovery fraud (Count VII).

Plaintiff was employed as a City Carrier Assistant for the postal service for one month—from November 12, 2022 to December 15, 2022, before he resigned.[1] Doc. 1 at 5. During his tenure, he reported to work five days. Doc. 1 at 10 (referring to his "five work tours"); Doc. 6 at 11 (referring to Plaintiff's work tours on November 20, 27, and 29 and December 1 and 5, 2022). At the time, he was 63 years old and alleges he suffered from gout.

Plaintiff reported to work at the Town and Country, Missouri post office on November 26, 2022. Although Plaintiff states he was supposed to receive on-the-job training, Postmaster Lamahn Shannon said he did not know of any on-the-job training, but needed Plaintiff to report to work the next day to pick up packages.[2] Doc. 6 at 9. As part of his job, Plaintiff was to use a "mobile delivery device" (MDD) to help him track and deliver packages. He "experienced significant functional and operational difficulties navigating the device's multiple screens, accessing GPS routes, and utilizing text functions," and he sought additional training. Doc. 1 at 10. Defendant Shannon told him that he "got the same training as everyone else," and that the other employees who had started that week were not having difficulty.[3] *Id.* Of Plaintiff's five work tours, he was assigned a MDD three times and used his personal cell phone with GPS for the other two. Doc. 1 at 10.

---

[1] A City Carrier Assistant is described by the United States Post Office as "full-time alternates for regular letter carriers." *See* https://about.usps.com/careers/city-carrier-assistants/ (last visited Aug. 27, 2026).

[2] On December 7, 2022, Plaintiff investigated this on-the-job training by going to the Ballwin post office and meeting one of the trainers, named Henry, and recording their conversation. When Plaintiff told Henry he received no on-the-job training, but instead was immediately assigned parcel delivery, Henry said, "'[T]hey probably gonna have you doing that until the 1st of the year,' then [Henry's Supervisor] said, 'yeah that's right, cause during peak season they're so busy.'" Doc. 6 at 5.

[3] In his EEOC Charge of Discrimination, Plaintiff states that the issues with the MDD were that the GPS was often inaccurate by up to 300 feet, it would freeze or jump screens, or it had connectivity issues. All of these issues suggest problems with the device, none of which would be cured by additional training. "When I told Mr. Shannon about the issues I was having with my MDD and how the GPS was off and how it was affecting my deliver[ies], he said, 'There's nothing I can do about that.'" Doc. 6 at 3.

Plaintiff alleges this statement "impl[ied] that Plaintiff's age-related difficulty with the technology was a personal failing." Doc. 1 at 11. Shannon then told Plaintiff that the general rule is to deliver 20 packages per hour, which Plaintiff characterizes as an attempt "to berate and intimidate him by imposing an arbitrary and non-existent standard." *Id.* Plaintiff asked Shannon about the variables involved in delivering packages, which he explains as long driveways in upscale subdivisions, safety procedures, GPS accuracy, etc., and Shannon "became visibly aggravated, demonstrating hostility toward Plaintiff's legitimate questions."[4] *Id.* Plaintiff alleges Shannon's non-verbal response "created a discriminatory work environment targeting Plaintiff as a senior citizen struggling with complex technology." *Id.* at 12.

On December 5, 2022, Plaintiff worked at the Chesterfield, Missouri post office under Supervisor Gregory Purnell. He injured his ankle on the job, and returned to the post office at 12:15 p.m. He states he "jammed" his ankle and asked Purnell if he could do a different job or "get some kind of accommodations" until his ankle was better. Purnell told Plaintiff to go see a doctor and bring back a doctor's note. *Id.* at 13. Plaintiff recorded this conversation, and many others, and had the recordings transcribed by a certified court reporter. *Id.* at 13, 19.

---

[4] Plaintiff details this interaction in his EEOC Charge of Discrimination. He asked Shannon, "What are the variables for that standard? If you're requiring me to deliver 20 packages an hour, there is 60 minutes in an hour, 60 seconds in a minute, that's 3600 seconds to deliver[] 20 packages, that amounts to 180 seconds a delivery. If I'm working on Conway Rd, (upscale subdivisions) some of the driveways are 100 ft.-200 ft. long, and if I deliver a package to the front door, even walking at a fast clip, at 2 steps a second, a 200 ft. long driveway to the door and back to the LLV is 170-175 steps (85 seconds), and that doesn't count the time it takes to put the LLV in park, curb the wheels, turn off the engine, unbuckle the seat belt, remove & secure the key, get the package and my scanner, lock the door, walk 400 ft. to the door and back to the LL[V], do a walk around to look for kids, unlock the door, put my seat belt on, start the LLV, look at the MDD-GPS for the next location, take off the parking brake, put it in drive with my foot on the break, check all the mirrors for upcoming traffic behind the LLV, then move forward. So, what's the variables for this 20 packages an hour, does the GPS only calculate the distance between stops to the mailbox, or is there a consideration for the travel time to some of these driveways for th[ese] huge houses?" Doc. 6 at 4.

Plaintiff returned to the Town and Country post office and spoke with Shannon and Supervisor Claudia Peace. He reported that he had jammed his ankle and needed to see a doctor. Again, he recorded this conversation. He asked, "Is there, like, some type of accommodation or is there some type of thing – other thing I can do until I get this ankle healed? Fixed?" *Id.* at 13. Peace responded, "No." Plaintiff asked if he was supposed to work through the pain, and Peace responded, "Just bring your [medical] documentation back." *Id.* at 14. At some point Shannon said, "I can't tell you what you can or cannot do without a doctor's restrictions." *Id.* at 15.

Plaintiff returned to work on December 6, 2022 with a doctor's note dated December 5, 2022, stating, "OFF WORK, Schedule to Return to work 12/15/2022." *Id.* Defendant Peace accepted the note, and Plaintiff was off work for ten days per doctor's orders. *Id.* at 15. On December 15, 2022, as scheduled, Plaintiff returned to work and provided Peace with his doctor's note and documentation again. *Id.* Plaintiff does not allege what he said, what Peace said, or what happened upon his return. He does not indicate any type of response from Defendants. He states only that he quit that same day, and had brought his completed resignation form with him.[5] He states, "The denial of reasonable accommodations caused Plaintiff to suffer unnecessary pain, medical complications, and inability to perform his job duties effectively, leading to his constructive discharge on December 15, 2022." *Id.* at 16.

The remainder of Plaintiff's complaint involves his EEOC administrative proceedings brought prior to filing suit. He alleges his independent investigation and discovery into the postal service, including several FOIA requests, revealed the postal service's failure to train supervisors in accommodation requests, that employees' statements under oath conflict with their statements

[5] In his EEOC Charge of Discrimination, Plaintiff states he had already filled out Form 2574 (the postal service's resignation form) before reporting to work on December 15, 2022, "to email to Mr. Shannon as an attachment informing him that I was terminating my employment with the USPS." Doc. 6 at 11.

in his audio recordings, and that the postal service engaged in discovery fraud and violations of litigation hold notices. *Id.* at 16-37.

For relief, Plaintiff seeks a declaration that Defendants violated federal law. He also asks Defendants to provide him reasonable accommodations and training, and for compensatory and punitive damages.

**Discussion**

Plaintiff has not plausibly alleged he was discriminated against based on his age or disability during his employment at the post office. Although he alleges he jammed his ankle during a shift, he does not allege what restrictions to his work were necessary to accommodate this disability or that he communicated any restrictions to his supervisors. His supervisors made no comments regarding his age or disability, and he received the same training as the other employees hired with him. He quit after five shifts delivering packages. He does not plausibly allege his resignation amounted to a constructive discharge based on hostile working conditions. As to his remaining claims arising out of his administrative proceedings, he does not state any private rights of action and these claims will be dismissed.

**I. Claims Brought Under the RA and ADA (Counts I and II)**

As an initial matter, as a former federal employee, Plaintiff cannot recover separately under the ADA. *See Carroll v. Potter*, 163 F. App'x 450, 450 (8th Cir. 2006). The ADA specifically excludes the United States from its definition of "employer." *See* 42 U.S.C. § 12111(5)(B). Instead, the RA, which is similar to the ADA, is meant to ensure that individuals with disabilities are not discriminated against under any program that receives federal funding. *See Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013). Because Plaintiff can only recover under the RA, his claim under the ADA must be dismissed. *Withers v. Johnson*, 763 F.3d 998, 1004 (8th

Cir. 2014).[6]

Discrimination under the RA includes the failure to provide reasonable accommodations to an employee's known disability. *See Hill v. Walker,* 737 F.3d 1209, 1216-17 (8th Cir. 2013); *Peebles v. Potter,* 354 F.3d 761, 765–67 (8th Cir. 2004). Specifically, "[a]n employer discriminates against an employee if the employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1059 (8th Cir. 2016); *see also* 42 U.S.C. § 12112(b)(5)(A). To establish a failure to accommodate claim, Plaintiff must allege: "(1) that [he] was disabled, (2) that [he] was qualified to do the essential job function with or without reasonable accommodation, and (3) that [he] suffered an adverse action due to [his] disability." *Dick*, 826 F.3d at 1060.

Plaintiff alleges that Defendants unlawfully discriminated against him on the basis of a disability (jammed ankle) by failing to accommodate his disability. He alleges that after he injured his ankle, he returned to the Chesterfield post office and told Supervisor Purnell that he had hurt his ankle and was in significant pain. He asked Purnell, "If I could do a different job or could I get some kind of accommodations until my ankle got better?" Doc. 1 at 12. Purnell told Plaintiff to see a doctor and bring back a doctor's note. *Id.* Plaintiff then left for the Town and Country post office, where he spoke with Postmaster Shannon and Supervisor Peace. He told both that he had hurt his ankle "and needed to go to the doctor because he couldn't take the pain anymore." *Id.* at 13. He recorded this interaction, "I tried moving around and just toughing it out, but I just can't

[6] "[D]ecisions interpreting either the ADA or the RA are applicable and interchangeable to claims under each statute." *Withers v. Johnson*, 763 F.3d 998, 1003 (8th Cir. 2014) (quoting *Hill v. Walker,* 737 F.3d 1209, 1216 (8th Cir. 2013)).

take it. Is there, like, some type of accommodation or is there some type of thing – other thing I can do until I get this ankle healed? Fixed?" *Id.* Peace responded, "No . . . Just bring your [doctor's] documentation back." *Id.* at 14. Postmaster Shannon stated, explicitly, "I can't tell you what you can or cannot do without a doctor's restrictions." Doc. 1 at 15. Plaintiff states that both Shannon and Peace "denied Plaintiff's oral request for reasonable accommodation and told him to go to the doctor and bring back a doctor's note." *Id.*

An "employer may ask for reasonable documentation concerning the employee's disability and functional limitations" if the "need for accommodation is not obvious." *Kobus v. Coll. of St. Scholastica, Inc.*, 608 F.3d 1034, 1039 (8th Cir. 2010). "Where a disability, resulting limitations, and necessary accommodations, are not open, obvious, and apparent to the employer, a plaintiff who fails to disclose her disability and request an accommodation from her employer cannot show that she is qualified with accommodation." *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 846 (8th Cir. 2015); *see also Allen v. Collins*, No. 1:24-cv-19-SNLJ, 2026 WL 878607, at *8 (E.D. Mo. Mar. 31, 2026) (finding the VA's request for additional medical documentation did not violate the RA). "The scope of the employer's obligation in this regard is determined through an informal, interactive process between the employer and the employee, identifying the limitations arising from the disability and potential reasonable accommodations that could overcome those limitations." *Gesinger v. Burwell*, 210 F. Supp. 3d 1177, 1194 (D.S.D. 2016) (citing *Ballard v. Rubin*, 284 F.3d 957, 961 (8th Cir. 2002)).

At the time Plaintiff asked for "some type of accommodation," Defendants did not know Plaintiff's physical limitations in performing his job. He had not seen a doctor, and he told Shannon and Peace that he needed to see a doctor. Doc. 1 at 13. Neither he nor Defendants knew the severity of his injury or what medical restrictions might apply. "[T]he language of

accommodation conveys the need for effectiveness, i.e., the ability of the accommodation to meet an individual's disability-related needs." *Peebles v. Potter*, 354 F.3d 761, 768 (8th Cir. 2004) (internal citation and quotations omitted); *accord Allen v. Interior Const. Servs., Ltd.,* 214 F.3d 978, 982 (8th Cir. 2000) ("[A]n accommodation is reasonable only if it is related to the accommodated individual's disability"). Tasked with finding a reasonable and effective accommodation to meet Plaintiff's needs, which were unexamined and unknown, Defendants were well within their rights to ask for reasonable documentation concerning Plaintiff's physical limitations. *See Kobus*, 608 F.3d at 1039.

Plaintiff retuned to work with a doctor's note stating that he needed to be off work for 10 days, which is a reasonable accommodation. *See Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n.6 (2d Cir. 2006) ("[A] leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work.") (collecting cases). His doctor restricted all work for 10 days, and Defendants accommodated this restriction. Upon his return to work, Plaintiff quit.

Plaintiff has not plausibly alleged Defendants committed unlawful employment discrimination under the RA by failing to provide reasonable accommodations for his jammed ankle. At the time of his request, Plaintiff had just injured himself and neither he nor Defendants knew the scope of his injury, his physical limitations, and what accommodation would meet his disability-related needs. Upon returning with his doctor's note requiring him to be off for 10 days, Defendants acted in good faith and accommodated this request.

Plaintiff has not stated a plausible claim for disability discrimination under the RA for failure to accommodate. For these reasons, on initial review, the Court dismisses Counts I and II for failure to state a claim upon which relief may be granted.

## II. Claims Under the ADEA (Count VIII)

Plaintiff alleges Defendants discriminated against him on the basis of his age, in violation of the ADEA. Doc. 1 at 51-55. He alleges the following discriminatory acts: not providing on-the-job training, which Plaintiff refers to as OJI training; not providing additional training on MDD device; comparing Plaintiff unfavorably to younger workers; using a fabricated performance standard to berate Plaintiff; and creating a hostile work environment.

To state a plausible claim of age discrimination under the ADEA, Plaintiff must allege that (1) he was a member of a protected class, at least 40 years old; (2) he was qualified to perform his job, (3) he suffered an adverse employment decision, and (4) there is some evidence that age was a factor in the employer's termination decision. *See Canning v. Creighton Univ.*, 995 F.3d 603, 611 (8th Cir. 2021). As Plaintiff suffered no adverse employment action and there is no evidence of any age discrimination, he fails to state a plausible claim of age discrimination.

### *(A) Alleged Discriminatory Acts*

Plaintiff alleges Defendants discriminated against him by not providing mandatory on-the-job training, not providing additional training on the MDD device, Defendant Shannon comparing Plaintiff unfavorably to younger workers; and Defendant Shannon using Plaintiff's difficulty with the technology "to berate and intimidate him." Doc. 1 at 53. The Court will address each alleged discriminatory act in turn.

As it relates to his on-the-job training, Plaintiff states that his City Carrier Assistant position required 24 hours of on-the-job training. Doc. 1 at 7. When he reported to his first shift, Postmaster Shannon "denied knowing anything about the OJI training but stated he needed Plaintiff to deliver packages the next day." *Id.* at 7. His supervisor, Claudia Peace, told Plaintiff that his on-the-job training "fell through" but that she wanted to keep him "on the clock," so she sent him to deliver

and pick up packages without the training. The only explanation in the record for why Plaintiff was denied on-the-job training was when Henry, a trainer at the Ballwin facility, told Plaintiff, "[T]hey probably gonna have you doing [package delivery and pick up] until the 1st of the year." Henry's supervisor, Mahogany, stated, "[Y]eah that's right, cause during peak season they're so busy." Doc. 6 at 5. This interaction points to Defendants putting Plaintiff to work delivering packages immediately because late-November to early-December is peak season at the post office. Plaintiff has alleged no facts indicating his lack of on-the-job training was related to his age.

In his EEOC Charge of Discrimination, Plaintiff states that he "found another employee that had recently started" and the employee told him "they didn't get any OJI training either, and that the Supervisors just sent them out to the streets to deliver Parcels and Pick-Up Parcels." Doc. 6 at 4. Plaintiff does not allege any other employee received on-the-job training. He does not allege that any younger employees starting on or near his start date received on-the-job training. There's simply no indication that Defendants denied Plaintiff on-the-job training because of his age.

Next, Plaintiff alleges that Defendants discriminated against him based on his age by failing to provide him additional training on the MDD device. But, Plaintiff's allegations establish that he received the same MDD training as everybody else. Doc. 1 at 10. When he asked for additional training, Postmaster Shannon stated that "two other people that started the same week as you did and they're not having that issue." Plaintiff alleges this implies he was having age-related difficulty with the MDD. This implication is unsupported by any factual allegations; no postal service employee suggested Plaintiff's difficulty with the MDD was related to his age. Plaintiff's allegations show nothing more than he was trained on the device the same as everybody else.

Next, Plaintiff characterizes Defendant Shannon's statement that "so you understand what the goal is, a general rule is to deliver 20 packages per hour" to demean Plaintiff, demonstrate hostility toward Plaintiff, and create a discriminatory work environment targeting Plaintiff as a senior citizen. Plaintiff alleges Shannon fabricated this goal "comparing him unfavorably to younger workers." Doc. 1 at 12. Again, Plaintiff has alleged no facts that would support this conclusion. Shannon stated a "general goal" of the postal service. Plaintiff does not allege this goal applied to only him or only to older employees, and he does not allege that Shannon said anything at all about Plaintiff's age or the age of any other employees. Plaintiff has alleged no facts from which the Court could find Shannon compared Plaintiff's efficiency to that of younger workers.

*(B) Alleged Constructive Discharge*

Finally, Plaintiff suffered no adverse employment decision. He alleges he was constructively discharged, but this allegation is unsupported by any facts. To make out a case of constructive discharge, Plaintiff needs to plausibly allege that a reasonable person would have found his working conditions intolerable, and that Defendants intended to make him resign or, at a minimum, that his resignation was reasonably foreseeable given his working conditions. *Reedy v. Quebecor Printing Eagle, Inc.,* 333 F.3d 906, 910 (8th Cir. 2003).

"The intolerability of working conditions is judged by an objective standard, and to prevail on a constructive discharge claim, a plaintiff must show that his or her working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Betz v. Chertoff*, 578 F.3d 929, 936 (8th Cir. 2009) (internal quotations omitted). "To act reasonably, an employee has an obligation not to assume the worst and jump to conclusions too quickly." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir. 1996) (citing

*West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995)). "An employee who quits without giving [his] employer a reasonable chance to work out a problem has not been constructively discharged." *Id.*

Plaintiff has not alleged a plausible claim of constructive discharge. He worked delivering packages only five days before he took a medical leave of ten days; upon his return, he quit. The Court has found already that Plaintiff has failed to state a claim of disability or age discrimination. Without evidence of any discrimination or a hostile work environment, Plaintiff has not plausibly alleged his working conditions were so intolerable that he was forced to quit. Even if he found the conditions intolerable, he did not give the postal service any chance to work out the problem, which is required. He reported to work on December 15, 2022 with his resignation form filled out in advance. Doc. 6 at 11. Just as Plaintiff's allegations do not support a plausible claim of discrimination, his allegations do not support a claim that he brought his complaints of alleged discrimination to the attention of his supervisors.

For these reasons, Plaintiff's claims brought under the ADEA will be dismissed for failure to state a claim upon which relief may be granted.

**III. Claim of Retaliation (Count III)**

In Count III, Plaintiff alleges Defendants retaliated against his request for reasonable accommodations and his filing of administrative proceedings by subjecting him to adverse employment actions and creating a hostile work environment. Again, the Court has found Plaintiff cannot state a plausible claim of discrimination or hostile work environment, and he resigned his position immediately upon his return from leave. Plaintiff offers no factual support for his allegations of retaliation. The Court will not accept as true Plaintiff's legal conclusions supported only by conclusory statements. *See Barton v. Taber*, 820 F.3d at 964. The claim will be dismissed.

## IV. Claims Arising From EEOC Proceedings

Plaintiff's remaining claims arise from his EEOC proceedings: deprivation of due process (Count IV); fraud and perjury in official proceedings (Count V); negligent training and systemic failure (Count VI); and spoliation of evidence and discovery fraud (Count VII). Plaintiff's dissatisfaction with the EEOC's investigation of his charge of discrimination and subsequent proceedings does not constitute the basis for a cognizable claim. "Courts have uniformly held that no cause of action exists with respect to the EEOC's handling of discrimination claims because Congress has given plaintiffs a right to file a de novo lawsuit against the allegedly discriminating employer." *Gipson v. EEOC*, 2025 WL 227297, *2 (D. Minn. Jan. 17, 2025) (quoting *Rude v. Laughing Sun Brewing Co., LLC,* 2020 WL 1073958, *2 (D.N.D. Mar. 5, 2020) (collecting cases)). Plaintiff filed this suit against his employer, which is "an all-purpose remedy for charging parties who are dissatisfied with the EEOC's handling of their charge." *Swinson v. EEOC*, 2024 WL 4625908, *2 (E.D. Mo. Oct. 30, 2024).

Additionally, no private rights of action exists for perjury or spoliation of evidence. *See Tufts v. Madesco Inv. Corp.*, 524 F. Supp. 484, 485-86 (E.D. Mo. 1981) (no private right of action for perjury); *Tinder v. Lewis Cnty. Nursing Home Dist.*, 207 F. Supp. 2d 951, 958-59 (E.D. Mo. 2001) (finding no independent cause of action for spoliation of evidence). For these reasons, Plaintiff's claims arising out of his EEOC proceedings will be dismissed for failure to state a claim upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's application to proceed in district court without prepaying fees or costs is **GRANTED**. (Doc. 4)

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel is **DENIED** as moot. (Doc. 4).

**IT IS FURTHER ORDERED** that Plaintiff's "Motion for 60-Day Extension of Time to Complete Service, Request for Ruling on Pending Motion, and Renewed Request for Appointment of Counsel" is **DENIED** as moot. (Doc. 7)

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 4th day of September, 2026.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE